**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **ADAPTIX, INC.**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:13-cv-437 |
| ) | |
| **DELL, INC.,** and ) | |
| **CELLCO PARTNERSHIP (d/b/a)** ) | **JURY TRIAL DEMANDED** |
| **VERIZON WIRELESS** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANT DELL INC.'S
MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

I.     INTRODUCTION

Dell argues that the Court must apply the terms of the Engagement Letter.  HMGH agrees.  Dell, however, misconstrues the plain language of the Engagement Letter and seeks to apply only those terms of the agreement that are convenient for them.  It is crystal clear that there is in fact no conflict of interest with respect to HMGH's representation of Adaptix in this case against Dell.  There is no possible way to interpret HMGH's representation of Adaptix as "substantially related" to attorneys from HBC's firm prior representation of Dell.  Only the Engagement Letter provides that any patent matter would be "substantially related" to the prior representation of Dell.  That same letter provides only that "any lawyer who views Dell confidential material or bills time to the Patent matter" would be prohibited from representing a plaintiff against Dell for a period of 36 months.  It is undisputed that Mssrs. Gannon and DeBlois billed time to the *Lodsys* matter, and therefore the two are precluded from representing a party adverse to Dell for the 36 month period set forth in the Engagement Letter.  Applying the rules of professional conduct, however, it is readily apparent that absent the Engagement Letter, an arguable conflict would not exist.  Further still, the Engagement Letter makes clear *that only* lawyers who worked on the *Lodsys* matter or viewed Dell confidential material – not the entire firm they might work for – would be subject to the restrictions of future representation adverse to Dell.  This is further clarified and confirmed by the email exchange between HBC attorneys and Dell's in-house counsel.

II.    ARGUMENT

    A.    MOTION SHOULD BE DENIED BECAUSE THE TWO MATTERS ARE NOT "SUBSTANTIALLY RELATED."

Dell continues to make the argument that a concurrent conflict of interest is implicated under these circumstances.  To substantiate their argument they point to *Merck Eprova AG v.*

1

*ProThera, Inc.* for the proposition that a concurrent representation should be judged "even if the representation ceases prior to the filing of a disqualification motion." 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009). In *Merck*, the conflicted firm represented a client in the prosecution of a joint patent. *Id.* at 204. Simultaneously, the conflicted firm attempted to represent one of those joint patent applicants in a claim for trademark infringement, among other things, relating to the same pharmaceutical product. *Id.* Upon learning of the simultaneous representation, one of the joint patent applicants terminated the conflicted firm's representation with regards to the patent prosecution and the conflicted firm attempted to continue representation of the trademark infringement claim. *Id.* at 205. In assessing which standard should apply —one of concurrent conflicts or those of a former client— the court held that the concurrent standard should apply, reasoning in accordance with the "hot potato" rule which finds that "counsel may not avoid a disqualifying conflict by dropping the less desirable client like a 'hot potato.'" *Id.* at 209. Here, the HBC counsel in the *Lodsys* matter left HBC and continued to represent Dell at their new firm. None of the HMGH attorneys representing Adaptix ever represented Dell. Dell is simply a former client of two attorneys who joined HMGH. Those two attorneys – and just those two attorneys -- have a contractual restriction on representing plaintiffs adverse to Dell. This Court should clearly distinguish the circumstances in the instant matter from those in *Merck*, where HMGH never attempted to drop Dell as a client in favor of a more desirable one and that the circumstances implicate the duties owed to a former client of two lateral attorneys.

       Dell next argues that the *Lodsys* matter and the instant litigation are substantially related. This is a further example by Dell in their effort to apply terms of the Engagement Letter that are convenient to them but negate those that are not. There is no substantial relationship between the former *Lodsys* matter and the present case such that would create an actual conflict. The

Engagement Letter provides that any patent matter would be deemed substantially related to the *Lodsys* matter, but Dell simply chooses to ignore the express consent provided in that same Engagement Letter that only HBC attorneys who received Dell confidential information or billed time to the prior matter —and not the entire firm— would be prohibited from representing parties against Dell. In fact, the ABA Model Rules even state that "[i]f the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel." ABA MODEL R. OF PROF'L CONDUCT RULE 1.9, cmt. 4.

### B. DELL'S MOTION SHOULD BE DENIED BECAUSE THEY EXPRESSLY CONSENTED TO FUTURE CONFLICTS.

Dell further misconstrues HMGH's waiver argument. It is often the case when discussing the consent to future conflicts to use the term "waiver" and "consent" interchangeably. In this case, HMGH refers to the term as it has been contemplated in the ABA Model Rules. ABA MODEL R. OF PROF'L CONDUCT RULE 1.7, cmt. 22. Under this provision, consent that is "general and open-ended" can be effective where "the client is an experienced user of legal services." *Id.* Courts continue to allow for general consents to future conflicts to be valid. *See eg.*, *Zador Corp. v. Kwan,* 37 Cal. Rptr. 2d 754, 765 (Ct. App. 1995) (holding consent to future adverse representation valid when particular adverse litigation implicit in circumstances); *see also Visa U.S.A., Inc. v. First Data Corp.,* 241 F. Supp. 2d 1100 (N.D. Cal. 2003) (holding advance consent valid because identity of possible litigation opponent specified although no litigation then anticipated). In fact, the only substantive inquiry in making a determination of informed consent relative to consent to future conflicts is "whether the waiver was fully informed." *Id*. at 1105. Further, the party's sophistication is an important and relevant factor when determining whether informed consent was given. *See eg.*, *Fisons Corp. v. Atochem*

3

*N. Am., Inc.,* 1990 WL 180551, at *6 (Nov. 14, 1990, S.D.N.Y.) (recognizing "[w]here a party is in a position to know the risks involved in a conflict of interest, fully informing that party of the conflict constitutes sufficient disclosure").

In Dell's response they cite to two cases for the proposition that implied waivers are not favored. The first case, *Islander East Rental Program v. Ferguson*, concerns the issue of whether a four month delay between the initiation of the action and the disqualification motion constitutes a waiver of the right to assert an objection to representation. 917 F. Supp. 504, 508 (S.D. Tex. 1996). It has never been HMGH's contention that any delay in bringing the present disqualification motion constitutes a waiver in the sense that Dell has interpreted it. Rather, it is HMGH's position that the Engagement Letter and supporting bargaining history constitute consent to future conflicts. As previously mentioned, the terms "waiver" and "consent" are frequently used interchangeably.

The second case, *In re Am. Continental Corp./ Lincoln Sav. & Loan Securities Lit.,* deals with the duties an attorney owes to a corporate client when the client is engaged in deceitful conduct, but makes no reference to how "implied consent is insufficient to waive a potential conflict of interest" as Dell purports. 794 F. Supp. 1424, 1452 (D. Ariz. 1992). Considering both cases serve no persuasive value and relate to matters not at issue in the instant case, they should be disregarded.

> **C.  IN AN ABUNDANCE OF CAUTION, AN EFFECTIVE AND TIMELY SCREEN WAS IMPLEMENTED TO PROTECT CLIENT CONFIDENCES.**

Dell next argues that HMGH's screen was inadequate. First, Dell argues that the screen was untimely by misstating the date for filing of the complaint. The complaint was filed on May 28, 2013. HBC withdrew as counsel on June 6, 2013. HMGH began its operations in July 2013,

and on July 3, 2013 instituted an effective screen in accordance with the ABA Model Rules and entered an appearance on September 27, 2013. Accordingly, the HMGH screen was put into effect three days after HMGH was formed. By all accounts this screen is certainly timely and effective.

Second, Dell attempts to argue that screens are ineffective as to small firms. Dell cites to *Van Jackson v. Check 'N Go of Illinois, Inc.*, where the court considered whether a screen at a firm of just 4 lawyers would be effective. 114 F. Supp. 2d 731, 731 (N.D. Ill. 2000). Contrary to Dell's position, the court in *Van Jackson* considered several factors in determining whether the firm should be disqualified, mainly, the size and structure of the firm, the likelihood of contact between the conflicted attorney and attorneys directly responsible for the matter, the mechanisms in place to limit the conflicted from accessing information pertaining to the representation and prevention of sharing of fees. *Id*. at 733. While the size of the firm is a single factor in determining the effectiveness of a screen, it is not determinative as Dell suggests. Furthermore, there was substantial evidence that the conflicted attorney in *Van Jackson* possessed "crucial, highly confidential information regarding the case." *Id.* at 732. Dell has put forth no such evidence.

Most importantly, HMGH is not attempting to use a screen to avoid a conflict. There is no conflict. HMGH, rather, is taking additional precautions to assure that the two individual attorneys with an obligation to not represent a plaintiff adverse Dell or a period of 36 months have no risk of access to any materials or information relating to the Adaptix matter adverse to Dell.

Dated:  November 25, 2013               **ADAPTIX, INC.**

By: */s/ Paul J. Hayes*
Paul J. Hayes
Steven E. Lipman
Samiyah Diaz
**HAYES MESSINA GILMAN**
**& HAYES, LLC**
200 State Street, 6th Floor
Boston, MA 02109
Tel: (617) 439-4200
Fax: (617) 443-1999
Email:  phayes@hayesmessina.com
Email:  slipman@hayesmessina.com
Email:  sdiaz@hayesmessina.com

Craig Tadlock
Texas State Bar No. 00791766
Keith Smiley
Texas State Bar No. 24067869
**TADLOCK LAW FIRM PLLC**
2701 Dallas Parkway, Suite 360
Plano, Texas 75093
Phone:  (903) 730-6789
Email: craig@tadlocklawfirm.com
           keith@tadlocklawfirm.com

**ATTORNEYS FOR PLAINTIFF**
**ADAPTIX, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3)(A) on November 25, 2013.

*/s/ Paul J. Hayes*
Paul J. Hayes

6