IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ADAPTIX, INC. | § | |
| | § | |
| v. | § | No. 6:13cv437 |
| | § | |
| DELL, INC., ET AL. | § | |

**O R D E R**

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. The following motion is before the Court: Dell Inc.'s Motion to Disqualify Plaintiff's Counsel (Docket Entry #28). The Court, having reviewed the relevant briefing, is of the opinion the motion should be **DENIED**.

## I.  BACKGROUND

Adaptix, Inc. ("Plaintiff") seeks to be represented in this case by attorneys from Hayes, Messina, Gilman & Hayes, LLC ("Hayes Messina" or "HMGH"). Defendant Dell Inc. ("Dell") moves to disqualify Hayes Messina. According to Dell, the association of Kevin Gannon and Jonathan DeBlois ("Attorneys Gannon and DeBlois") with Hayes Messina creates a conflict of interest that requires the disqualification of the entire firm. Dell asserts this conflict of interest cannot be cured by the screening procedures instituted by Hayes Messina. Although Dell originally moved to disqualify Hayes Messina's co-counsel, the Tadlock Law Firm, Dell states in its reply that it no longer objects to the Tadlock firm's representation of Plaintiff.

The Court provides the following timeline of relevant facts. On May 10, 2012, Dell was sued by Lodsys Group, LLC ("Lodsys"). *See Lodsys Group, LLC v. Dell Inc.*, No. 2:12-CV-289 (E.D. Tex.)  Lodsys' complaint against Dell asserted infringement by, among other products,

1

Dell printers, which were made by Lexmark. At the time Dell was sued by Lodsys, Lexmark had already been sued by Lodsys for infringing the same patent. *See Lodsys Group, LLC v. Brother International Corporation, et al.*, No. 2:11-CV-90-JRG (E.D. Tex.) ("*Lead Lodsys* Case"). The Court consolidated Lodsys' case against Dell with the *Lead Lodsys* Case. Consolidation Order, No. 2:11-CV-90-JRG (Docket Entry #258).

Dell requested defense and indemnification from Lexmark for products made by Lexmark in the *Lodsys* case against Dell. In response to Dell's request, Lexmark recommended its defense counsel at the law firm of Hayes Bostock & Cronin, LLC ("HBC") also represent Dell in the matter. Dell agreed to be represented by HBC,[1] but only on certain conditions. Those conditions were memorialized in a July 24, 2012 Engagement Letter and Acknowledgement for *Lodsys v. Dell Inc*. (Docket Entry #28, Ex. B)("Final Engagement Letter").

The terms of the Final Engagement Letter were the result of negotiations between Dell's in-house counsel and HBC with respect to a number of issues, including whether Dell could later object to other firm lawyers (beyond the specific attorneys who viewed confidential material or billed time to the *Lodsys* matter) representing future plaintiffs in litigation against Dell. Dell's in-house litigation counsel, Lauren Hoffer, first sent Eugene Feher of HBC a form engagement letter, dated July 9, 2012, setting forth the proposed terms of the engagement and the obligations of each party to the agreement. (Docket Entry #38, Ex. A)(July 9, 2012 Draft Engagement Letter). The letter explained that HBC was being retained "to defend Dell in the Patent Matter with respect to the allegations involving Lexmark products." (*Id.*). In addition, in the section of the Draft Engagement Letter entitled "Integrity," Dell provided that it reserved the right to

---

[1] Dell was also represented in the case by Kimball R. Anderson of Winston & Strawn, who also serves as counsel for Dell in the present case.

decline a conflict waiver request and then specified future conflicts that it waived and did not waive. (*Id.* at 3). The Draft Engagement Letter stated that "Dell considers all patent matters to be substantially related to the Patent Matter and considers representation of a plaintiff or entity asserting its patent against Dell in any matter to be a conflict." (*Id.*). The Draft Engagement Letter then specified the scope of Dell's waiver with respect to such conflicts and stated that "Dell expressly objects to any lawyer or staff who views Dell confidential material or bills time to the Patent Matter from representing a plaintiff against Dell in the future; Dell does not waive this conflict." (*Id.*).

Mr. Feher, on behalf of HBC, wrote back to Ms. Hoffer, stating HBC accepted the terms of the letter with the following clarifications. Mr. Feher explained that HBC could not agree to the limitations of future representation as proposed; specifically, it was "too open ended" and "forever" barred them from being adverse to a party even if all ethical and conflict laws and rules were met. (Docket Entry #38, Ex. B)(Letter dated July 17, 2012). After a series of calls and email exchanges between Mr. Feher and Ms. Hoffer from July 18-20, 2012 regarding the scope of the restriction on future representation, Dell and HBC agreed that only those HBC lawyers who worked on the *Lodsys* matter, and not the whole firm, would not represent a plaintiff against Dell for a period of 36 months after the conclusion of that lawyer's representation of Dell in the *Lodsys* matter. In the email correspondence between Mr. Feher and Ms. Hoffer, Ms. Hoffer explicitly stated Dell's view that the restriction of future representation of plaintiffs against Dell was to apply only to the individual lawyers involved in the *Lodsys* matter. Specifically, Ms. Hoffer explained to Mr. Feher as follows:

> On the very last provision - understood on forever can compromise with a time limit – How about 5 years from the resolution of this case on the time that attorneys working on this Case (not the whole firm) would be limited to working

3

> adverse to Dell? I would like to have the provisions roped into the engagement letter so that it is neatly tied up and we're not getting into some extrinsic evidence quagmire. Would you mind drafting?
> Thanks!
> Lauren

(Docket Entry #38, Ex. C). In response, Mr. Feher confirmed the parties' understanding as to the scope of the future prohibition: "attorneys working on this case (not the whole firm) will not represent a plaintiff against Dell." (*Id.*).

A Final Engagement Letter, dated July 24, 2012, was signed by Dell and HBC. Regarding conflicts, the letter provides as follows:

> During Hayes Bostock and Cronin LLC's representation of Dell, it will be working closely with the Dell patent litigation and patent teams and will be privy to confidential information and general strategy. As such, Dell considers all patent matters to be substantially related to the Patent Matter and considers representation of a plaintiff or entity asserting its patents against Dell in any patent matter to be a conflict. Dell expressly objects to any lawyer who views Dell confidential material or bills time to the Patent Matter from representing a plaintiff against Dell for a period of 36 months after conclusion of the lawyer's representation of Dell in the Patent Matter; Dell does not waive this conflict.

(Docket Entry #28, Ex. B at 3). The Final Engagement Letter further states that "Dell consents to Lexmark's control of the Patent Matter with respect to Lexmark-supplied products and the payment of Hayes, Bostock & Cronin, LLC's invoices. Dell and counsel retained by Dell [e.g., Winston & Strawn] will control Dell's defense regarding the non-Lexmark products." (*Id.* at 1). According to Plaintiff, such delineation of HBC's representation made it highly unlikely that HBC would be exposed to any Dell confidential information.

Along with Kimball Anderson of Winston & Strawn, HBC attorneys Eugene Feher, Paul J. Cronin, and John Capone entered appearances on behalf of Dell in the *Lodsys* matter. During the course of the *Lodsys* matter, HBC associates Kevin Gannon and Jonathan DeBlois performed a limited amount of work on the case. Plaintiff asserts neither Mr. Gannon nor Mr. DeBlois

4

entered an appearance in the matter on behalf of Dell, nor did they receive or view any Dell confidential information. According to Plaintiff, they assisted Mr. Feher and Mr. Cronin as follows: reviewing preliminary responsive documents of Lexmark; preparing Lexmark's initial disclosures; reviewing the file history of the patent-in-suit; drafting an answer; and participating in a few meetings.

In May of 2013, the HBC firm dissolved upon the resignation of Dean Bostock. At about the time of its dissolution, an attorney from the HBC firm, who had been misinformed that the *Lodsys* matter had already settled, commenced the present action against Dell on May 28, 2013. Dell's counsel objected to the HBC's firm's representation in light of the still pending *Lodsys* matter. The HBC firm immediately withdrew its appearance in this case. (Docket Entry #38, Ex. E)(Notice of Withdrawal, dated June 6, 2013).

Shortly thereafter, on July 1, 2013, the former members who had worked on the *Lodsys* matter while at HBC joined the law firm of Nutter McClennan & Fish. (Docket Entry #38, Ex. F)(Press Release, dated July 1, 2013). Upon joining the Nutter McClennan firm, Mr. Feher and Mr. Cronin took the *Lodsys* matter to their new firm and noted their new firm affiliation in connection with their appearances in the *Lodsys* matter. (Docket Entry #38, Ex. G). After July 1, 2013, HBC no longer represented Dell or any party in the *Lodsys* matter.

The Hayes Messina law firm began operations on July 1, 2013. Mr. Gannon was invited to join the firm as a partner and Mr. DeBlois as an associate. Plaintiff asserts Hayes Messina had no attorney-client relationship with Dell. According to Plaintiff, immediately upon starting its practice, Hayes Messina recognized the need for screening procedures even though Attorneys Gannon and DeBlois never worked on the present matter. Therefore, as a precautionary measure, Hayes Messina initiated a screening protocol for both Attorneys Gannon and DeBlois, taking

5

effect on July 3, 2013 and remaining in effect until the appropriate time. (Docket Entry # 38, Exs. H, J).

According to the Overview of Screening Protocol, "[d]ue to some limited involvement in a HBC case where Dell was the client, Kevin Gannon and Jonathan DeBlois have a conflict of interest that, without proper screening, could be imputed to HMG." (*Id.* at 1). While their involvement was "minimal at best," it was noted that Mr. Gannon and Mr. DeBlois were involved in the case and billed for their work. (*Id.*). The protocol further provided Attorneys Gannon and DeBlois would not use any information relating to the previous Dell case to the disadvantage of Dell or reveal information relating to the Dell case; they would be immediately screened from any participation in the *Adaptix* case against Dell and would not be apportioned any part of the fee therefrom; Dell must be promptly provided with written notice to enable them to ascertain Hayes Messina's compliance; and Dell must be provided with certifications of compliance by Mr. Gannon, Mr. DeBlois, and Mr. Hayes on behalf of Hayes Messina.

In a memorandum dated July 3, 2013, Tom Fulford notified all Hayes Messina attorneys and staff of the screening procedures, instructing attorneys and staff to avoid any communication with Attorneys Gannon and DeBlois with respect to the *Adaptix* case against Dell. (Docket Entry # 38, Ex. I). According to the memo, this prohibition applies to both verbal communications and electronic correspondence. It was stated in the memo Attorneys Gannon and DeBlois were aware of and had acknowledged their personal obligations to avoid prohibited communications. The memo also outlined specific protective measures that were being implemented to ensure Attorneys Gannon and DeBlois were denied access to firm files relating to the Dell matter.

On July 18, 2013 notice of these screening procedures was sent to Dell and counsel for Dell. (Docket Entry # 38, Ex. J). A memorandum to Dell, Inc. and Kimball R. Anderson of

Winston & Strawn provides as follows:

- All Hayes Messina attorneys and staff have been instructed to avoid communication with Attorneys Gannon and DeBlois with respect to the Dell matter. The prohibition applies to verbal and electronic communications.

- Attorneys Gannon and DeBlois have been made aware of and have acknowledged their personal obligations to avoid such prohibited communications and will take necessary steps to ensure compliance with all screening procedure and the Rules of Professional Conduct.

- Protective measures have been implemented to ensure Attorneys Gannon and DeBlois are denied access to HMGH files related to the Dell matter (i.e password protecting computer files, storing all physical documents or materials in such a way as to conceal them from public view, and instructing all HMGH attorneys to take all reasonable measures to keep physical documents concealed and secure).

- All HMGH attorneys and staff were also instructed that strict compliance with these procedures was mandatory, and these procedures would be in place until further notice from Paul Hayes.

- Regular, periodic reminders of the screening procedure obligations have been scheduled to be automatically sent once every month to all HMGH attorneys and staff.

(*Id.*). According to the memo to Dell, neither HMGH nor Attorneys Gannon or DeBlois had disclosed or used any material confidential information of Dell.

On July 23, 2013, Dell responded with an email, arguing the screening procedures would not cure the conflict of interest. (Docket Entry # 28, Ex. E). According to Dell, the ABA Model Rules allows for lateral screening in certain circumstances, but the Texas rules, with which Attorneys Gannon and DeBlois must comply, do not allow screening to avoid the imputation of a conflict of interest to the entire firm. Despite Dell's objection, the Hayes Messina firm appeared as counsel on behalf of Plaintiff. (Docket Entry #17, filed September 27, 2013).

## II. DELL'S MOTION TO DISQUALIFY

Dell now moves to disqualify Hayes Messina as counsel of record for Plaintiff.

According to Dell, Hayes Messina is conflicted under both the Texas Disciplinary Rules of Professional Conduct ("Texas Rules") and the ABA Model Rules of Professional Conduct ("ABA Model Rules"). Dell asserts the Court should first look to the Texas Rules and then, if necessary, to the national standards. *See In re ProEducation Int'l, Inc.,* 587 F.3d 296, 299 (5th Cir.2009). In response, Plaintiff asserts Dell and HBC expressly agreed that any objection to future representation applied only to the attorneys who received Dell's confidential information or billed time in the *Lodsys* matter and that the restriction would not be imputed to the attorneys' entire firm. According to Plaintiff, Dell waived any conflict that may arise in future litigation against Dell and offered informed consent that other firm attorneys may represent parties adverse to Dell. Plaintiff further asserts there is no conflict because the *Lodsys* matter and the current matter are not substantially related, and there is no threat of shared confidences. Finally, despite the lack of an actual conflict, Plaintiff asserts Hayes Messina has nonetheless instituted an effective screening protocol.

### III. APPLICABLE LAW

As disqualification is a procedural matter not unique to patent law, regional circuit law applies. *Picker Int'l, Inc. v. Varian Assocs., Inc.*, 869 F.2d 578, 580–81 (Fed. Cir. 1989). "Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir.1992). In the Fifth Circuit, when considering disqualification of an attorney, district courts generally rely upon the following: (1) the local rules in the district; (2) American Bar Association's ("ABA's") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct. *Horaist v. Doctor's Hosp. Of Opelousas,* 255 F.3d 261, 266 (5th Cir.2001). The attorney disqualification

rules are not to be mechanically applied. *See Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1569 (5th. Cir.1989). "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir.1995).

In the Eastern District of Texas, "the standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court." Eastern District of Texas, Local Rule AT–2. In Texas, disqualification is a "severe remedy." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex.1989). Motions to disqualify are subject to an exacting standard both to protect a party's right to counsel of choice, as well as to discourage the use of such motions as a "dilatory trial tactic." *Id.*

"Although federal courts may adopt state or ABA rules as their ethical standards, whether and how those rules should be applied remains a question of federal law." *Hill v. Hunt*, 2008 WL 4108120 (N.D. Tex. 2008)(unreported). "The ABA Model Rules propound different tests for conflicts of interest arising in concurrent and former representations." *JuxtaComm-Texas Software, LLC v. Axway, Inc., et al.*, 2010 WL 4920909, *2 (E.D. Tex. 2010)(unreported). ABA Model Rule 1.7 governs concurrent conflicts of interest:

> Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or third person or by a personal interest of the lawyer.

ABA MODEL RULE 1.7(a). Subparagraph (b) provides as follows:

9

>   (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>   (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
>   (2) the representation is not prohibited by law;
>
>   (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
>   (4) each affected client gives informed consent, confirmed in writing.

ABA MODEL RULE 1.7(b).

ABA Model Rule 1.9 is identical to Texas Rule 1.09 in all important respects and applies a similar standard to duties owed to former clients, disclosing in pertinent part as follows:

>   (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
>   > (1) whose interests are materially adverse to that person; and
>   >
>   > (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.

ABA MODEL RULE 1.9(b).

While the Texas Disciplinary Rules of Professional conduct may be relevant to the issue of disqualification, the rules are not dispositive. *Id.*; *see In re Am. Airlines*, 972 F.2d at 610. The Texas rule on conflicts of interest involving current clients is more lenient that the ABA Model Rules. The Texas rule allows representing clients against current clients so long as the two matters are not substantially related or reasonably appear to be or become adversely limited. *Galderma Labs v. Actavis Mid Atlantic LLC*, 927 F.Supp.2d 390, 396 (N.D. Tex. 2013). There is no need for informed consent. *Id.*

The Fifth Circuit has shown a preference for the more stringent ABA Model Rules. *In re Dresser*, 972 F.2d at 544. Thus, the Court will apply the Model Rules to the present facts. *See JuxtaComm-Texas*, 2010 WL 4920909 at *2; *see also Galderma Labs.*, 927 F. Supp. 2d at 405 ("In the Fifth Circuit, the Model Rules are the primary source of guidance for this Court. . . .").

## IV. DISCUSSION

**A.      Whether the conflict at issue is governed by ABA Model Rule 1.7 or 1.9**

It is undisputed that Attorneys Gannon and DeBlois billed time to the *Lodys* matter and are precluded from representing a party adverse to Dell for the 36 month period set forth in the Final Engagement Letter. But according to Dell, the entire firm they work for now is also subject to the restrictions of future representation adverse to Dell. As an initial matter, the parties dispute whether the issue before the Court is one of a concurrent conflict under ABA Model Rule 1.7 (as urged by Dell) or a conflict involving former representations under ABA Model Rule 1.9 (as urged by Plaintiff).

Dell asserts the conflict of interest is readily apparent under Texas Rule 1.06(b)(2) and ABA Model Rule 1.7(a), which governs concurrent conflicts of interest. Dell further argues the entire law firm is conflicted if any one lawyer in the firm is conflicted. *See* e.g. TEX. R. DISCIPLINARY P. 1.09(b) (the personal conflicts of one attorney are imputed to all other members of a firm). Although Dell acknowledges ABA Model Rule 1.10(a)(2) allows screening of certain conflicts of interest, Dell asserts it is only for conflicts of interest that arise out of ABA Model Rule 1.9, and the Hayes Messina conflict at issue arises under ABA Model Rule 1.7(a)(2) which does not allow for screening. Consequently, Dell argues Hayes Messina should be conflicted because of Attorney Gannon and DeBlois' ongoing material responsibilities to Dell outlined in the Final Engagement Letter.

Specifically regarding whether this issue falls under AMA Model Rule 1.7 or 1.9, Dell asserts that while the HBC law firm was representing Dell in the *Lodsys* matter, the HBC law firm simultaneously sued its own client Dell in this *Adaptix* action. After Dell protested and after some delay, according to Dell, the HBC lawyers who represent *Adaptix* in this action (Hayes, Lipman and Diaz) conceded they had a conflict of interest and withdrew as counsel for Adaptix. *See* Plaintiff Adaptix's Notice of Withdrawal of Counsel, Docket No. 10, filed June 6, 2013. According to Dell, months later, the same lawyers who earlier breached their duty of loyalty to Dell joined a new firm—Hayes Messina—and then reappeared as Adaptix's counsel adverse to Dell. Relying on two cases from New York, Dell asserts this motion should be viewed under the standard for concurrent representation even though the representation ceased prior to the filing of its current disqualification motion. *See Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009)("[w]here counsel have simultaneously represented clients with differing interests, the standard for concurrent representation applies even if the representation ceases prior to the filing of a disqualification motion."); *see also Anderson v. Nassau County Dept. of Corrections*, 376 F. Supp. 2d 294, 298 (E.D.N.Y. 2005) ("[T]he status of the relationship is assessed at the time that the conflict arises.").

On the other hand, Plaintiff asserts this matter is governed by ABA Model Rule 1.9 because the attorneys immediately responsible for the *Lodsys* matter left HBC and continued to represent Dell at their new firm. Plaintiff asserts that matter is now closed, and this dispute relates to a new law firm's duties owed to the former clients of two lateral attorneys, who have a contractual restriction on representing plaintiffs adverse to Dell and who have been screened.

In *In re DataTreasury Corp.*, 2010 WL 3074395, at *1 (Fed. Cir.2010), the Federal Circuit Court of Appeals considered whether to mandamus Judge Folsom for denying DataTreasury's

motion to disqualify a lateral attorney who had joined a new firm after he had represented DataTreasury regarding a patent licensing agreement. *Id*.  After the attorney joined the new firm, the firm recognized it was defending a patent infringement lawsuit involving the same client that the new attorney had represented for the aforementioned patent licensing agreement. *Id.* Judge Folsom determined that the attorney's prior representation constituted an attorney-client relationship and that the prior and current matters were "substantially related" using a conflict rule involving former representation.

Even though the current and former matters were substantially related, Judge Folsom used a "balancing approach" and denied the motion to disqualify the new firm, noting Fish & Richardson had been one of the most active firms in the four-year old litigation and the cost of retaining new counsel would be substantial. *Id.* Noting that Judge Folsom's above concerns outweighed the previous representation which had been provided by the attorney which "entailed no receipt of information that [would] be considered privileged at trial," the Federal Circuit held DataTreasury had not met its burden of establishing a clear and indisputable right to mandamus relief.  *Id.* at *3.

In this case, the HBC lawyers who were primarily responsible for the *Lodsys* matter, Mr. Feher and Mr. Cronin, left HBC upon the firm's dissolution at the end of June of 2013.   They then continued to represent Dell in the *Lodsys* matter and entered appearances in the case at their new firm.   The *Lodsys* matter was dismissed with prejudice on August 13, 2013. Hayes Messina first entered an appearance in this case on September 27, 2013, more than one month after the *Lodsys* matter was dismissed with prejudice.  Hayes Messina has no attorney-client relationship with Dell and has never represented Dell.  Dell is simply a former client of two former HBC attorneys who have now joined Hayes Messina and who billed only a few hours on the *Lodsys*

matter and neither of which made an appearance in the case at any point. Given these facts, the Court finds the conflict at issue here is more properly viewed as one involving former representations under ABA Model Rule 1.9.

**B.** **Whether the *Lodsys* matter and the current matter are substantially related**

For conflicts involving former representations, the movant must prove either that the present and former matters are substantially related or that the former attorney actually possesses relevant confidential information. *In re Am. Airlines*, 972 F.2d at 615; *see also* ABA MODEL RULE 1.9; TEX. R. DISCIPLINARY P. 1.09. Even when matters are not substantially related, a former client may still disqualify former counsel by showing that confidential information was provided to counsel and that the confidential information is relevant to the new matter. *City of El Paso v. Salas-Porras Soule*, 6 F.Supp.2d 616, 624 (W.D. Tex. 1998).

Under the substantially related test, the movant must prove: "1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *In re Am. Airlines*, 972 F.2d at 614. In determining if the present and former matters are substantially related, courts have identified three relevant factors: "(1) the factual similarities between the current and former representations, (2) the similarities between the legal question posed, and (3) the nature and extent of the attorney's involvement with the former representation." *Power Mosfet Techs, L.L.C. v. Siemens AG*, No. 2:99-CV-168, 2002 U.S. Dist. LEXIS 27557 at *2, (E.D. Tex. 2002).

If the movant establishes that the prior matter is substantially related to the present matter, an irrebuttable presumption arises that relevant confidential information was disclosed during the former representation. *In re Am. Airlines*, 972 F.2d at 614. A second irrebuttable

presumption determines confidences obtained by an individual lawyer will be shared with the other members of his firm. *Id.*   The movant bears the burden of proving that disqualification is warranted.   *In re Am. Airlines, Inc.*, 972 F.2d at 614; *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981).

Dell asserts that both parties agreed, by virtue of the Final Engagement Letter, that all patent matters are substantially related to the Lodsys matter.   The only evidence Dell provides is the Integrity clause of the Final Engagement letter, which states that "Dell considers all patent matters to be substantially related to the Patent Matter and considers representation of a plaintiff or entity asserting its patents against Dell in any patent matter to be a conflict."

Plaintiff asserts the current and former matters are not substantially related. According to Plaintiff, Dell's retention of HBC in the *Lodsys* matter was to defend Dell with respect to the Dell-branded Lexmark technology accused in the case, and Dell had separate counsel to address any issues relating to Dell technology.  Plaintiff points out the present matter relates to Dell technology utilized within their Latitude Series laptop devices. Plaintiff argues Dell cannot reasonably claim a substantial relationship exists between HBC's representation of Dell involving Lexmark printer technology and Hayes Messina's representation of Adaptix involving Dell laptop technology and wireless communications capabilities.

The factual similarities between the *Lodsys* matter and the current litigation are not significant. While both cases involve alleged patent infringement, HBC's representation, as discussed above, was related almost exclusively with the Lexmark printer technology.  The nature and extent of Attorneys Gannon and DeBlois' involvement in the Lodsys matter was not significant. Considering the lack of significant factual similarity between the *Lodsys* and Adaptix matters, and the limited extent of Attorneys' Gannon and DeBlois' roles in the *Lodsys* matter, the

Court is not convinced Dell has satisfied its burden of showing a substantial relationship exists between the subject matter of the former and present representation. However, even if the Court were to assume the two matters are substantially related, the Court would find Hayes Messina's screening protocol and other issues sufficient to cure any conflict.

C.  **Whether Hayes Messina's screening protocol is sufficient to cure any conflict**

ABA Model Rule 1.10(a)(2) allows for screening as a means of avoiding imputed conflicts under certain circumstances. Specifically, the rule provides as follows:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless
>
> (1) the prohibition is based on a personal interest of the disqualified lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm; or
>
> (2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and
>
> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;
>
> (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and
>
> (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

ABA Model Rule 1.10(a).

Dell asserts screening of conflicts is only allowed in certain limited situations outlined in ABA Model Rule 1.9 regarding former conflicts, but this issue is governed by ABA Model Rule

1.7. Even if the Court were to consider this issue one involving former representations under ABA Model Rule 1.9 (which it is), Dell asserts Hayes Messina's screening was not timely. Dell further asserts screens are ineffective in small law firms.

According to Plaintiff, out of an abundance of caution Hayes Messina has instituted a timely and comprehensive screen to avoid sharing of any information that either Mr. Gannon or Mr. DeBlois may possess. Pursuant to the screen, which the Court finds was timely implemented three days after Hayes Messina was formed, Attorneys Gannon and DeBlois have been isolated from any participation in the current matter, including a written agreement that the two attorneys would avoid any communication with other Hayes Messina personnel relating to the *Adaptix* matter. All HMGH lawyers have been notified of the screening and are continuously notified on a monthly basis that the screen is still in effect. Additionally, several mandatory security measures (i.e. password protection) have been put into place.

While the Court recognizes the size and structure of a law firm can interfere with its effectiveness, the Court is not convinced this consideration outweighs the security measures and mandatory procedures Hayes Messina has put in place to ensure appropriate screening of Attorneys Gannon and DeBlois. Therefore, even if the Court were to find there was a conflict under ABA Model Rule 1.9, the Court would find Hayes Messina's screening protocol sufficient as a means of avoiding imputing any such conflict to the entire firm.

**D.    Balancing approach**

Finally, the Court notes that depriving "a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *Fed. Deposit Ins. Corp. v. U. S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995). If the Court were to

use a balancing approach similar to that used by Judge Folsom in *DataTreasury*, such an approach would bolster the Court's finding there is no conflict here.

Importantly, the provision in the Final Engagement Letter entered into between Dell and HBC expressly defines the future prohibition on HBC lawyers representing a future plaintiff against Dell as limited to "any lawyer who views Dell confidential material or bills time to the Patent Matter from representing a plaintiff against Dell for a period of 36 months after conclusion of the lawyer's representation of Dell in the Patent Matter." This provision was negotiated by Dell's in-house litigation counsel, Ms. Hoffer, an experienced attorney who understood the implications of such an agreement, particularly the limits, both temporally and substantively, of what Dell could prohibit HBC lawyers from doing in the future. The Court also notes Dell is a sophisticated client.

True to the terms Final Engagement Letter, Attorneys Gannon and DeBlois, at their new firm Hayes Messina, have not represented any client against Dell and, in an abundance of caution, have been screened from any involvement in or discussion of the *Adaptix* case. Plaintiff asserts neither Attorney Gannon nor DeBlois has had any role, been involved in any way, nor been included in any communications regarding the Dell matter in strict compliance with the Final Engagement Letter.

The Court also considers the following facts: (1) the numerous *Adaptix* lawsuits pending before the Court are also being handled by Hayes Messina; (2) Hayes Messina has a familiarity with the issues in this case; (3) Attorneys Gannon and De Blois have represented they billed only minimal hours in the *Lodsys* matter which involved patents different from those involved in this case; and (4) Attorneys Gannon and DeBlois were not privy to Dell confidential information. On balance, Dell's concerns do not outweigh these facts and Plaintiff's right to choose its own

counsel, as well as considerations of efficient administration of justice.  *See In re Data Treasury Corp.,* 2010 WL 3074395, at *1.

For all of these reasons, the Court **DENIES** Defendant's Motion to Disqualify Hayes Messina as Counsel of Record for Adaptix (Docket Entry #28).

**SIGNED this 12th day of February, 2014.**

_____
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE